IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

JOHN R. WEST,

        Plaintiff,

vs.                                    **Case No. 09-4125-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security Administration,

        Defendant.

---

**MEMORANDUM AND ORDER**

This is an action to review a final decision by the Commissioner of Social Security regarding plaintiff's entitlement to disability insurance benefits and supplemental security income (SSI) benefits under the Social Security Act. The parties have briefed the relevant issues and the court is now prepared to rule.

Plaintiff filed applications for disability and SSI benefits on November 6, 2006. In the applications, plaintiff alleged his disability began on September 30, 2005. Plaintiff's applications were denied initially and on reconsideration by the Social Security Administration(SSA). A hearing was ultimately conducted by an administrative law judge (ALJ) on plaintiff's applications on July 15, 2008. At the hearing, plaintiff amended his applications to assert an onset date of July 31, 2006. On September 11, 2008, the ALJ determined in a written opinion that plaintiff was not entitled to disability or SSI benefits. On July 14, 2009, the Appeals

Council of the SSA denied plaintiff's request for final review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. See Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

> Step one requires the claimant to demonstrate that he is not presently engaged in substantial gainful activity. At step two, the claimant must show that he has a medically severe impairment or combination of impairments. At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits. If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work.
>
> If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy, given her age, education, and work experience. If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.

Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation marks and citations omitted; brackets in original).

This court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wall v. Astrue, 561

2

F.3d 1048, 1052 (10th Cir. 2009) (quotation omitted). But "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Lax, 489 F.3d at 1084 (quotation omitted). Thus, "we may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Id. (quotation omitted). Finally, while "we will not reweigh the evidence or retry the case, we meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Wall, 561 F.3d at 1052 (quotations omitted).

Plaintiff was born on April 22, 1967. He is a college graduate. He worked as an office manager for a family trucking company until December 2000. He left the business to take care of his father who was ill. He did so until 2005 when his father died. He worked for three months in the summer of 2006 with Kansas State University organizing football video and film. This position ended on July 31, 2006.

The medical evidence in the record is from February 2005 to June 2008. During this period, plaintiff underwent treatment for back pain, a heart condition and depression. He had numerous hospital visits, many of which were for depression. He often

3

appeared angry and spoke of suicide. At this time, he was taking high doses of narcotics. He continually sought pain medication during his hospital visits. Plaintiff also saw physicians for back pain during this period. He has had several operations on his back since 1997. In July 2007, he underwent a spinal fusion.

At the hearing before the ALJ, plaintiff's counsel indicated that plaintiff was disabled due to back problems and depression. Plaintiff testified he has lived alone in an apartment since August 1, 2007. He indicated he had had several back surgeries including one in April 2007 and one in August 2007. He suggested he is taking several pain medications and they affect his memory. He stated he could not perform his past employment due to his memory failures. He testified he suffered a stroke in 2007. He thought the stroke had caused memory loss. He stated he used a cane to walk and had to lie down eight to eleven times a day for ten to thirty minutes. He suggested he could lift twenty-five pounds, but that he would "pay a price for it later." He said he cannot stand for more than ten minutes due to pain and cannot sit for more than fifteen to twenty minutes at a time. He thought that his need for a cane was prescribed by a doctor but stated it was unlikely that it was in his medical records. He was unaware that he had refused to go to a consultative examiner for psychological tests.

A vocational expert testified that an individual with the residual functional capacity(RFC) described by the ALJ, i.e., good

4

ability to read and write and use numbers but limited to light work with occasional lifting up to twenty pounds and frequent lifting up to ten pounds with six hours of sitting daily with alternate sitting and standing every thirty minutes and no climbing or exposure to hazards such as unprotected heights or dangerous machinery, could work as a ticket clerk, counter clerk, cutter and eyeglass polisher. He further testified these positions exist in Kansas and nationally. He also indicated that such an individual could not perform these jobs or any other jobs if frequent and unscheduled rest breaks were required.

The ALJ found plaintiff had the following severe impairments: "degenerative disc disease status post multiple discectomy and fusion operations, hypertension, and hypertrophic cardiomyopathy." He also determined that plaintiff's mental impairment of "major depressive disorder" was non-severe because it did not cause more than minimal limitation in plaintiff's ability to perform basic mental work. The ALJ found that plaintiff did not have a listed impairment. He further determined that plaintiff had the residual functional capacity to do light work with certain limitations. He then concluded that plaintiff could not perform his past relevant work but that he could perform jobs that exist in significant numbers in the national economy. Thus, he decided plaintiff was not under a disability from September 30, 2005 through the date of his decision.

Plaintiff raises the following arguments concerning the ALJ's decision: (1) the ALJ failed to consider his personality disorder impairment at step 2, and erred in failing to consider the impairment at step 3; (2) the ALJ failed to find his major depressive disorder was a severe impairment, and erred in making severity findings under part B of Listing 12.04; (3) the ALJ failed to adequately evaluate his allegations of severe and disabling back pain; and (4) the ALJ erred in determining his RFC.

Plaintiff contends that the ALJ erred in failing to consider his personality disorder impairment at steps 2 and 3. Plaintiff initially contends that the ALJ failed to consider his personality disorder as a severe impairment under step 2. Plaintiff next argues that the ALJ failed to properly consider this disorder at step 3.

As noted above, the existence of one or more severe impairments at step 2 does not entitle the claimant to benefits. Impairments identified as "severe" at step 2 are measured to determine if they constitute a listed impairment at step 3 so the claimant can automatically qualify for disability benefits. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). If the impairments do not meet a listing or are not substantially equivalent to a listing, they are still considered for purposes of developing a residual functional capacity finding to apply in step 4 and 5. Id. at §§ 404.1520(e), 416.920(e). Here, the ALJ

6

identified certain severe impairments. He then proceeded to the next step in the sequential analysis. His failure to specifically identify plaintiff's personality disorder as a severe impairment was harmless since he proceeded to consider the following steps. See Oldham v. Astrue, 509 F.3d 1254, 1256 (10th Cir. 2007). Under the regulations, once an ALJ finds that a claimant has at least one severe impairment, he does not err in failing to designate other disorders as severe at step two, because at later steps the agency "will consider the combined effect of all of [claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523; see also id. § 416.945(e)("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). "After finding [a] severe impairment[ ], the ALJ still had the task of determining the extent to which [claimant's] impairments . . . restricted [his] ability to work." Oldham, 509 F.3d at 1257.

Plaintiff next contends that the ALJ failed to properly consider his personality disorder at step 3. He also suggests that the ALJ failed to find his major depressive disorder was a severe impairment and erred in making the severity findings under part B of Listing 12.04. Again, we find no errors.

"When a record contains evidence of a mental impairment that allegedly prevented claimant from working, the [Commissioner] is

7

required to follow the procedure for evaluating the potential mental impairment." Andrade v. Sec'y of Health & Human Servs., 985 F.2d 1045, 1048 (10th Cir. 1993) (quotation omitted). In this instance, the ALJ did so. In doing so, he did not specifically mention plaintiff's personality disorder. However, he did mention the various attributes of the personality disorder noted by plaintiff in his brief, e.g., short temper, irritability, manipulative, no close friends or confidants. The court finds that these symptoms of plaintiff's personality disorder were considered by the ALJ in assessing plaintiff's mental impairments.

Moreover, the court finds that the ALJ properly considered the requirements under part B of Listing 12.04 (affective disorders). Under Listing 12.04, a claimant is disabled if he exhibits two of the following impairments:

> 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration.

See 20 C.F.R. § 404, Subpt. P, App. 1 at 12.04B. These same requirements must be considered under Listing 12.08 (personality disorders). If the ALJ rates the first three functional areas as "none" or "mild" and the fourth area as "none," the impairment is generally not considered severe and the claimant is conclusively not disabled. Id. § 404.1520a(d)(1).

The ALJ found that plaintiff suffered only mild limitations in

8

the activities of daily living, social functioning and concentration. He further determined that plaintiff had suffered no episodes of decompensation. The court believes that the ALJ carefully considered these matters. Although the court recognizes as pointed out by plaintiff that these matters are not undisputed, we are persuaded that there is substantial evidence in the record to support the findings of the ALJ.

The court does agree with an observation offered by the defendant in his brief. The defendant asserts that plaintiff's claim of debilitating mental symptoms is of recent origin. Efforts were made after plaintiff filed his applications to consider any mental impairments. In November 2006, after the SSA attempted to arrange a consultative mental health examination, plaintiff indicated that he was not alleging a mental impairment. He also did not list mental impairments in the questionnaires he completed in support of his application. Finally, he denied psychiatric problems during a June 2007 examination and did not testify to significant mental problems at the hearing before the ALJ aside from recent memory issues. Thus, as pointed out by the defendant, it is not surprising that the ALJ found plaintiff's mental impairments non-severe.

Plaintiff next argues the ALJ failed to adequately evaluate his allegation of severe and disabling back pain. Specifically, plaintiff contends the ALJ failed to properly consider his need to

9

lie down frequently during the day. Relying on <u>Hinton v. Massanari</u>, 13 Fed.Appx. 819 (10th Cir. 2001), plaintiff contends the ALJ erred in determining that plaintiff's testimony on this matter was not credible.

The court finds that <u>Hinton</u> provides little support here. Plaintiff correctly points out that the Tenth Circuit in <u>Hinton</u> did conclude that the ALJ had improperly assessed the plaintiff's credibility on her testimony that she needed to lie down frequently during the day. <u>Hinton</u>, 213 Fed.Appx. at 823-824. However, the circumstances were different from the instant case because, in <u>Hinton</u>, a physician had indicated that plaintiff should lie down frequently to ease her back pain. <u>Id</u>. at 823. Here, the record is void of any physician providing support for plaintiff's testimony that he needs to lie down frequently every day. As pointed out by the defendant, although it may be true as plaintiff claims that no physician opined that he did not need to lie down, it is plaintiff's burden to prove limitations, not the Commissioner's burden to refute them. <u>See</u> <u>Gibbons v. Barnhart</u>, 85 Fed.Appx. 88, 94 (10th Cir. 2003) ("The lack of evidence to disprove an impairment is not proof that an impairment exists.").

In addition, unlike <u>Hinton</u>, the ALJ here identified several factors which he found were inconsistent with plaintiff's testimony. The ALJ made an extensive review of the plaintiff's testimony concerning his exertional limitations. In determining

10

that the plaintiff's testimony concerning the intensity, persistence and limiting effects of his impairments was not credible, the ALJ considered the plaintiff's prior inconsistent statements and the medical record. The court finds that the ALJ properly evaluated the credibility of the plaintiff. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). While an ALJ must do more than simply "recite[ ] the general factors he considered," so long as "the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," his determination must stand. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). In sum, the court finds that the ALJ's credibility determination of plaintiff's testimony was properly linked to substantial evidence in the record.

Finally, plaintiff contends that the ALJ erred in assessing his RFC. He argues that the ALJ failed to consider his major depressive disorder, his personality disorder and his need to lie down due to back pain.

In formulating the RFC at step four, the ALJ found that plaintiff was limited to lifting or carrying up to twenty pounds occasionally and ten pounds frequently, and plaintiff could only stand or walk for two hours out of an eight-hour workday and sit

11

for six hours out of an eight-hour workday. He determined that these restrictions were based on plaintiff's back pain and cardiomyopathy. He further determined that plaintiff should not climb ropes, ladders or scaffolds and should avoid hazards such as unprotected heights and dangerous machinery. He believed that these restrictions were needed due to plaintiff's decreased ability to move and respond quickly. Finally, he found that plaintiff's mental impairments limited him to unskilled work involving simple instructions.

The only specific aspect of the ALJ's physical findings that plaintiff disputes is the ALJ's implicit conclusion that plaintiff did not need to lie down during the day. The only evidence in the record supporting this assertion was plaintiff's testimony and, as set forth above, the ALJ provided sufficient reasons for finding plaintiff's testimony not credible. See Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009)("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ credibility and RFC determinations are inherently interwined.").

Plaintiff also contends that the ALJ did not properly consider his mental impairments in reaching his RFC finding. Once again, we disagree. As noted by the plaintiff, the ALJ did not specifically refer to plaintiff's personality disorder. But the mere fact that an impairment exists does not necessarily mean that that impairment has resulted in functional limitations sufficiently significant to

affect a claimant's ability to perform work activities. There is obviously no requirement that the ALJ reference everything in the administrative record. See Wall, 561 F.3d at 1067 ("The ALJ is not required to discuss every piece of evidence.") (further quotation omitted). The ALJ properly concluded that plaintiff's mental impairments caused only mild limitations. The ALJ accommodated these limitations by restricting plaintiff to simple, unskilled work. The court finds that the ALJ, in formulating his RFC, carefully considered the entire record and all of the claimant's symptoms to the extent that they were reasonably consistent with the evidence, including the objective medical evidence.

Based upon the foregoing, the decision of the Commissioner shall be affirmed.

**IT IS SO ORDERED.**

Dated this 9th day of November, 2010 at Topeka, Kansas.

> s/Richard D. Rogers
> United States District Judge